TOBY BOATWRIGHT,

                Plaintiff,

vs.
                           CIVIL ACTION NO.: CV207-038

MARTHA CHIPI; JEFFREY
COUGHLIN; JOSE M. VAZQUEZ,
and the FEDERAL BUREAU OF
PRISONS,

                Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Federal Satellite Low in Jesup,
Georgia ("FSL Jesup"), filed a cause of action pursuant to 28 U.S.C. § 1331 and Bivens
v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct.
1999, 29 L. Ed. 2d 619 (1971), contesting the conditions of his confinement.
Defendants Chipi, Coughlin, Vazquez, and the Federal Bureau of Prisons
("Defendants") filed a Motion to Dismiss, or in the Alternative, for Summary Judgment.[1]
Plaintiff filed a Response, to which Defendants filed a Reply. Plaintiff filed a second

---

[1] The parties submitted documentation in support of their positions, and the undersigned utilized this
documentation in reaching his recommendations. Accordingly, Defendants' Motion is converted to a
Motion for Summary Judgment. A court must ordinarily notify the parties of such a conversion and allow
the parties ten (10) days to supplement the record. Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265,
1267 (11th Cir. 2002). However, "when a party proves through its actions that it has notice of the
conversion [from a Motion to Dismiss to a Motion for Summary Judgment], any failure to notify the party is
rightly deemed harmless." Id. at 1268. It is evident the parties, especially Plaintiff, were aware the Court
would convert Defendants' Motion to Dismiss to a Motion for Summary Judgment given the number of
pleadings and supporting documentation filed with the Court.

Response, and Defendants filed another Reply. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff alleges he sustained a neck and spine injury while he was incarcerated at the Federal Correctional Institution in Beaumont, Texas. Plaintiff asserts doctors diagnosed him following his injury with degenerative disc disease with probable stenosis and a torn meniscus in his left knee. Plaintiff contends that, although he has made several requests, Defendants refused to treat his injuries and his "constant pain." (Doc. No. 1, pp. 3-4). Plaintiff asserts that Defendant Chipi refused to provide him with "anything other than ibuprofen" for his pain despite her knowledge that ibuprofen is insufficient for treating such severe pain. Plaintiff contends that Defendants Coughlin and Vasquez have "created and implemented an unwritten policy that requires medical providers to use ibuprofen as the 'magic cure all' for all complaints of pain." (Id., p. 7). Plaintiff also contends that Defendant Chipi failed to order corrective surgery for his knee and spine in a timely fashion, and that Defendants Coughlin and Vazquez are liable for this failure because of their policy of not providing for inmate surgery unless the condition is life threatening.[2]

Defendant Chipi asserts she provided Plaintiff with adequate medical care. Defendants Vazquez and Coughlin contend they, as supervisory personnel at FSL Jesup, were not responsible for the medical care inmates receive. Defendants also

---

[2] Plaintiff asserts he has been seen by a neurosurgeon and has had cervical spine surgery. Plaintiff states his claims that he had not been evaluated by a neurosurgeon or had surgery on his neck are moot to the extent he has received these services. (Doc. No. 40, p. 1). Plaintiff's allegations that Defendants were deliberately indifferent to his serious medical needs pertaining to his neck and spine are included to the extent Plaintiff contends any delay in receiving treatment for his neck and spine constitutes deliberate indifference.

contend Plaintiff cannot sustain a cause of action against the Federal Bureau of Prisons.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the

nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## I. Plaintiff's <u>Bivens</u> Claims Against the Federal Bureau of Prisons

Defendants assert that, to the extent Boatwright seeks to hold the Federal Bureau of Prisons liable pursuant to <u>Bivens</u>, his claims against the Federal Bureau of Prisons should be dismissed. Defendants also assert the United States Supreme Court has not extended <u>Bivens</u> liability to permit causes of action against federal agencies. Plaintiff agrees with these assertions but notes that the Federal Bureau of Prisons is a proper Defendant under the Administrative Procedures Act.

To the extent Plaintiff seeks to hold the Federal Bureau of Prisons liable for any alleged constitutional violations pursuant to <u>Bivens</u>, he cannot do so. See <u>FDIC v. Meyer</u>, 510 U.S. 471, 485-86, 114 S. Ct. 996, 1005-06, 127 L. Ed. 2d 308 (1994) (stating the proper defendants in a <u>Bivens</u> claim are the federal officers who allegedly violated the plaintiff's constitutional rights, not the federal agency which employs the officers). Plaintiff's <u>Bivens</u> claims against the Federal Bureau of Prisons should be dismissed.

## II. Plaintiff's Administrative Procedures Act Claims Against the Bureau of Prisons

Defendants contend Plaintiff has made conclusory allegations that an unwritten policy regarding medications and medical expenses exists; however, Defendants note, Plaintiff cites no evidence that such a policy exists or that an unwritten policy or practice

would be subject to the strictures of the Administrative Procedures Act ("APA"). Defendants also contend the mandamus provision of the APA only applies to the final decisions of a governmental agency, and because Plaintiff's medical treatment still is ongoing, there has been no final decision within the meaning of the APA. Defendants further contend the mandamus remedy allows the federal courts to order an agency to act in cases where the agency fails to carry out a mandatory, nondiscretionary duty. Defendants assert that the time and type of medical care an inmate receives are matters over which the Bureau of Prisons has discretion, and a decision to provide treatment Plaintiff wanted is not a mandatory action.

Plaintiff alleges he has exhausted all available administrative remedies and that, although he has received surgery for his neck and spine problems, he has not received surgery on his knee. Plaintiff contends Defendants have "arrived at a definitive position on the issue that inflicts an actual, concrete injury." (Doc. No. 40, p. 33). Plaintiff asserts that, although the Bureau of Prisons' discretion may be wide, it does not extend to violations of his constitutional rights. Plaintiff also asserts that the issue before the Court is not what treatment he wanted or wants, but, rather, what specific treatment was and is constitutionally compelled. Finally, Plaintiff asserts the Court has the power to direct the Bureau of Prisons to act because its actions are contrary to a constitutional right. (Doc. No. 40, p. 34).

"As a general rule, actions taken by federal administrative agencies are subject to judicial review." National Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003) (citing 5 U.S.C. § 706). However, under 5 U.S.C. § 701(a), federal courts lack jurisdiction over administrative action where "(1) statutes preclude judicial

AO 72A
(Rev. 8/82)

review; or (2) agency action is committed to agency discretion by law." "Notably, these are not the only circumstances under which federal courts cannot review an agency's acts[.]" Norton, 324 F.3d at 1236. Judicial review is not permissible in those situations where an agency action can be challenged through an "adequate remedy in a court[.]" 5 U.S.C. § 704.

As is evident by Plaintiff having brought his claims properly pursuant to section 1331 and Bivens, Plaintiff is able to challenge in federal court what he considers the Federal Bureau of Prisons' final decision regarding his medical care. Thus, Plaintiff cannot sustain a cause of action against the Federal Bureau of Prisons pursuant to the APA.

### III. Plaintiff's Supervisory Liability Claims

Defendant Vazquez avers he had general supervisory authority over the entire institution in Jesup, Georgia, in his position as former Warden. Defendant Coughlin avers he had general supervisory authority over the Health Services Unit as the acting Health Systems Administrator ("HSA"). Defendants Vazquez and Coughlin contend that neither of them made specific decisions about what medical care inmates receive and that Plaintiff has not alleged sufficient facts to establish their personal involvement in any alleged constitutional violation. Defendant Vazquez asserts that he relied on other staff members to investigate and prepare responses to an inmate's Administrative Remedy request because so many of these requests were filed. Defendant Vazquez alleges that his signing of these requests does not provide sufficient personal involvement to establish a constitutional violation. Defendants Vazquez and Coughlin contend they relied on Defendant Chipi and other treating medical staff members to

provide inmates with appropriate medical care and that they had no personal involvement in Plaintiff's medical care.

Plaintiff alleges that Defendant Coughlin consulted with medical staff in order to prepare responses to his Administrative Remedy requests, and, as a result, Defendant Coughlin was aware of Plaintiff's complaints concerning his neck, spine, and knee injuries. Plaintiff also alleges Defendant Coughlin took no action to ensure he received prompt treatment for his serious medical needs, even though Defendant Coughlin could have done so in his position as the HSA. Plaintiff states Defendant Coughlin could have made sure he was seen immediately by a neurosurgeon by prioritizing Plaintiff's case. Plaintiff contends Defendant Coughlin had his medical records at his disposal when he drafted the response to Plaintiff's Administrative Remedy requests. Plaintiff also contends that, in light of this admission, Defendant Coughlin cannot assert he did not know Plaintiff suffered from serious medical needs requiring immediate treatment. Plaintiff avers Defendant Coughlin delayed acting on Plaintiff's serious medical needs based on budgetary concerns, not medically justifiable reasons. Plaintiff alleges Defendant Coughlin was in the chain of command for approval of medical procedures and for scheduling consults with outside doctors. Because of Defendant Coughlin's position, Plaintiff asserts, he could have ensured Plaintiff was promptly scheduled for a follow-up MRI, that Plaintiff had his medical records with him when he went to see an outside doctor, and that he was "promptly scheduled for surgery." (Doc. No. 40, p. 16). Plaintiff contends Defendants Vazquez and Coughlin had policies in place which resulted in the deliberate indifference to his serious medical needs. Plaintiff also

contends Defendants Vazquez and Coughlin knew their subordinates would deny or delay his treatment but failed to stop them from doing so.

"It is well established in this circuit that supervisory officials are not liable under Bivens for unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). However, supervisors "'can be liable . . . when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of plaintiff[], and his conduct was causally related to the constitutional violation committed by [the] subordinate.'" Id. (quoting Greason v. Kemp, 897 F.2d 829, 836 (11th Cir. 1990)). "A causal connection may be established when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Matthews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal citation omitted).

Defendant Coughlin submitted a Declaration in support of the Defendants' Motion. In his Declaration, Defendant Coughlin, the acting HSA for an eleven (11) month period ending on May 4, 2007, states he did not provide inmates with hands-on medical assessments, treatment, or care. Defendant Coughlin also states he is not medically trained and relied on the medical staff for medical determinations as to an inmate's medical needs. (Defs.' Ex. E, ¶ 2). Defendant Coughlin asserts that, had Plaintiff presented any medical care issue to him, he would have referred Plaintiff to the

medical staff to address the issue or consulted with the medical staff to ensure Plaintiff was receiving appropriate care based on the medical judgment of the medical staff. (Id. at ¶ 3). Defendant Coughlin avers that he did not create or implement an unwritten policy which would have restricted medical staff to prescribe only ibuprofen to treat an inmate's pain or which would have approved surgery for an inmate only when he had a life-threatening emergency. Defendant Coughlin contends that medical staff determined what prescriptions and surgeries an inmate should have, pursuant to Bureau of Prisons' policy. (Id. at ¶ 4). Additionally, Defendant Coughlin contends that he concurred with medical staff referrals for Plaintiff to be seen by medical specialists. Finally, Defendant Coughlin contends that he would prepare draft responses to an inmate's Administrative Remedy request about medical issues for the Warden's signature, and in so doing, he would review the inmate's medical file and/or consult with the treating medical staff. (Id. at ¶ 5).

Defendant Vazquez, who is the former Warden at the prison, likewise submitted a Declaration in support of Defendants' Motion. In addition to echoing many of the statements Defendant Coughlin set forth in his Declaration (Defs.' Ex. F, ¶¶ 2-4), Defendant Vazquez states he did not investigate the issues raised in an inmate's Administrative Remedy request or prepare the response to a request because the inmates filed several hundred Administrative Remedy requests on an annual basis, which made it impossible for him to investigate every one of these requests. (Id. at ¶ 5). Defendant Vazquez also states a member of his staff would prepare a response for his review, and he would sign the response if he found it responsive to the inmate's concerns. (Id.)

Defendants also submitted Program Statement 6031.01, the purpose of which is for staff to "effectively deliver medically necessary health care to inmates." (Defs.' Ex. G, p. 1). According to this Program Statement, the administrative responsibility and supervision of non-clinical staff are under the HSA's direction; in contrast, clinical care of inmates is under the supervision of the Clinical Director, "who provides direct patient care and supervises other health care providers." (Id., p. 2). In Defendants' Statement of Material Facts, Defendants Coughlin and Vazquez state they did not provide inmates with hands-on medical assessments, treatment, or care; were not medically trained; and relied upon treating medical staff for medical determinations and treatment due to their supervisory positions at the Jesup facility. (Doc. No.19, ¶¶ 32, 39). Defendants Coughlin and Vazquez also state they did not create or implement unwritten policies which would have restricted medical staff to prescribing only ibuprofen for pain or which permitted surgery for inmates only in life-threatening situations. (Id. at ¶¶ 35, 40).

Plaintiff filed his own Statement of Material Facts. In response to the statements of Defendants Coughlin and Vazquez that they had no medical training and did not provide any medical treatment, Plaintiff "accepts" these statements "as true." (Doc. No. 41, ¶¶ 32, 39). As to these Defendants' statements that they did not create or implement unwritten policies, Plaintiff asserts he "can neither accept as true or deny." (Id. at ¶¶ 35, 40).

The evidence before the Court reveals that Defendants Coughlin and Vazquez held supervisory positions at FSL Jesup during the relevant time frame. However, this evidence also reveals that Defendants Coughlin and Vazquez did not provide inmates with hands-on medical treatment or care, had no medical training, and relied upon

medical staff to make determinations and provide treatment to inmates based on their medical needs. Additionally, the evidence reveals that Defendants Coughlin and Vazquez did not implement any policies which would have limited the care or treatment inmates would have received from medical staff. Plaintiff offers nothing to rebut this evidence; rather, the most Plaintiff offers is that he can neither accept as true or deny Defendants' assertions in this regard. Plaintiff fails to establish the existence of fact material to his contention that Defendants Coughlin and Vazquez are responsible for any alleged deliberate indifference to his serious medical needs. The evidence before the Court indicates Plaintiff seeks to hold Defendants Coughlin and Vazquez liable based solely on their formerly held supervisory positions at the Federal Correctional Institution in Jesup, Georgia. Defendants Coughlin and Vazquez are entitled to summary judgment in their favor.

## IV. Plaintiff's Deliberate Indifference Claims[3]

Defendant Chipi contends that Plaintiff's claims amount to medical negligence at the most but not deliberate indifference. Defendant Chipi asserts Plaintiff's own allegations establish that he was monitored regularly by medical staff and was referred to specialists and for special tests on more than one occasion. Defendant Chipi alleges Plaintiff received surgery to his neck and cervical spine after a "reasonable period of evaluation and fulfillment of authorization procedures." (Doc. No. 18, p. 12). Defendant Chipi also alleges there is merely a difference of opinion between medical personnel and Plaintiff as to whether surgery on his knee is necessary.

---

[3] Given the recommended disposition of Plaintiff's claims against the Federal Bureau of Prisons, Coughlin, and Vazquez, the analysis of Plaintiff's deliberate indifference claims is focused on his allegations against Defendant Chipi only.

Plaintiff contends Defendant Chipi was aware of his serious medical needs attributed to his problems with his neck and spine as early as October 2005. Plaintiff contends Defendant Chipi was deliberately indifferent to his serious medical needs because she failed to treat his pain adequately and purposefully delayed treatment, despite her knowledge of Plaintiff's medical conditions. Plaintiff also contends that Defendant Chipi's statements that she was not aware of the need for immediate surgery for his neck, spine, or knee and that she did not refuse to schedule him for surgery are "simply disingenuous and clearly contradicted by the record." (Doc. No. 40, p. 5). Plaintiff further contends Defendant Chipi's pain management offerings were insufficient to control his pain and that he has not refused any medications. Plaintiff avers that being monitored and referred to specialists are not substitutes for treatment of a serious medical need, nor are they valid defenses against his allegations of deliberate indifference.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 820 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105, 97 S. Ct. at 291). Rather, "an inmate must allege acts

or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. Harris, 941 F.2d at 1505.

"The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical

condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Det. Center Staff, 2008 WL 170578, *4 (11th Cir. Jan. 22, 2008) (quoting Harris, 941 F.2d at 1504). For example, the Eleventh Circuit has determined "that a doctor's failure to administer stronger medication . . . pending the arrival of [an] ambulance . . . [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Id. (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir.1995)). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Defendant Chipi, who was the acting Clinical Director and the Clinical Director during the relevant period, provided a Declaration in support of Defendants' position that she provided adequate medical care to Plaintiff. Defendant Chipi states she provided inmates at the Federal Correctional Institution in Jesup, Georgia, with hands-on medical assessments, treatment, and care. Defendant Chipi asserts Plaintiff received x-ray evaluations, which were interpreted by a radiologist soon after he arrived at the facility, and these evaluations revealed that Plaintiff had arthritic degenerative disc disease of the lower cervical spine and that he had a previous surgery on his left knee; however, Defendant Chipi did not think there was a need for medical intervention at that time. (Defs.' Ex. A, ¶ 3). Defendant Chipi also asserts that Plaintiff's medical records reveal Plaintiff was seen on several occasions, either by Defendant Chipi and the medical staff or outside medical providers. (Id. at ¶¶ 4-24). Defendant Chipi states she was not involved frequently in Plaintiff's medical care, but she did not refuse to provide him with

what she considered in her medical judgment to be adequate pain medications. Defendant Chipi also states she was not aware that Plaintiff required immediate surgery for his neck, spine, or knee, nor did she refuse to schedule him for any necessary surgery. (Id. at ¶ 27). Defendant Chipi contends she was not directed to provide inmates with only ibuprofen for pain management and that she was not aware of any policy requiring this. Defendant Chipi also contends she was not aware of any policy which limited the ability to receive outside care to those inmates who have life-threatening conditions. (Id. at ¶¶ 28-29). Finally, Defendant Chipi opines that, in her professional judgment as a physician, the medical care Plaintiff received "has been adequate and appropriate to treat [his conditions], and the medications he has been offered and provided are adequate and appropriate to provide him relief and for pain management." (Id. at ¶ 30).

Defendants also submitted copies of Plaintiff's medical records since his confinement began at FCI Jesup. According to these records[4], Plaintiff's first visit with medical staff was on August 2, 2005. Plaintiff complained of hurting his neck and re-tearing the anterior cruciate ligament ("ACL") in his left knee. It was noted that Plaintiff demanded a repair but that his injuries were not documented by any report in his file; it was also noted that Plaintiff would be evaluated once he was out of segregation, and he was placed on strict sports restriction. Plaintiff was seen again on August 29, 2005. Plaintiff's pain was reported as being a 3 on a scale of 1 to 10, Plaintiff was again told

---

[4] The undersigned's recitation of Plaintiff's medical records will be as accurate as possible, though this task is made difficult because some of the handwritten notes are illegible. Additionally, the medical staff utilized shorthand, and the undersigned is unable to discern what this shorthand means in all instances. Moreover, Plaintiff's medical records, though not voluminous, are scattered throughout Defendants' Exhibits, are not in chronological order, and do not appear to be complete. While Defendant Chipi's Declaration is set forth in a clear, chronological order, it would have been helpful and more efficient to the Court had counsel provided cites to evidence of record supporting the statements Dr. Chipi made in her Declaration.

not to play sports, and x-rays were ordered by Physician's Assistant Miguel Terradas. (Defs.' Ex. W, p. 1). Plaintiff went back to the medical unit on September 30, 2005, and his x-ray results were reviewed. Plaintiff was diagnosed with cervical degenerative disc disease. Plaintiff's pain was reported as being a 4 on a scale of 1 to 10. The Physician's Assistant noted that there should be a consult with Dr. Douglas Hein, an orthopedic surgeon, which would be requested through the Utilization Review Committee ("URC"). (Id., p. 2).

On November 30, 2005, Dr. Hein issued his consultation regarding Plaintiff's neck and spine condition; Dr. Hein stated that there was a severe decrease in the space between Plaintiff's C6 and C7 vertebrae. Dr. Hein opined that Plaintiff had disc degeneration with probable stenosis and recommended Plaintiff undergo a Magnetic Resonance Imaging ("MRI"). (Defs.' Ex. T). Dr. Hein also examined Plaintiff's knee on January 11, 2006, and Dr. Hein opined that Plaintiff had a torn medial meniscus and mild ACL laxity in his left knee. Dr. Hein recommended that Plaintiff undergo arthroscopic surgery for his left knee problems. (Defs.' Ex. U).

Plaintiff was seen by Dr. Chipi on January 31, 2006, for chronic pain management; he complained his pain was a 9 on a scale of 1 to 10. Defendant Chipi noted she was awaiting the results of Plaintiff's MRI for a recommendation and that Plaintiff refused medications. (Defs.' Ex. L).

On April 26, 2006, Plaintiff wrote Mr. Limonta, the HSA, a Request to Staff in which he stated he had been awaiting some type of medical treatment for some time. Mr. Limonta informed Plaintiff he had been placed on a scheduled list to have an MRI

and that, once that was finished, Plaintiff's condition would be re-evaluated for further consideration. (Defs.' Ex. O).

On May 24, 2006, Plaintiff was sent to Wayne Memorial Hospital to have an MRI of his cervical spine, which revealed Plaintiff had narrowing of his cervical spine. (Defs.' Ex. Q). The URC met on June 14, 2006, and it was determined Plaintiff was approved for a transfer to a medical center for surgery. (Defs.' Ex. A, ¶ 8; Defs.' Ex. M, p. 3). On November 2, 2006,[5] the URC approved Plaintiff for a neurosurgery consult, and on November 8, 2006, Plaintiff was taken to Savannah to see a consultant neurosurgeon for an evaluation. (Defs.' Ex. Z, p. 2; Defs.' Ex. CC; Defs.' Ex. A, ¶¶ 13-14).

Dr. Randolph Bishop, the neurological consultant, stated "[t]here is really not much in the way of radicular pain or any weakness in his arms or legs . . . He really hasn't had any form of conservative treatment." (Defs.' Ex. I, p. 1). Dr. Bishop also stated Plaintiff had an MRI previously, which demonstrated he had cervical stenosis, and that he needed to get the films to review them. (Id. at 2). Plaintiff was seen again by Dr. Bishop on January 5, 2007, and Dr. Bishop found that Plaintiff should have another MRI. (Defs.' Ex. A, ¶ 15; Defs.' Ex. X, p. 1; Defs.' Ex. CC).

Dr. Chipi saw Plaintiff on February 6, 2007, and his pain was reported as being a 1 to 2 on a scale of 1 to 10. Dr. Chipi noted they were awaiting another MRI and that there should be a consult with neurology after the MRI was performed. Dr. Chipi

---

[5] In her Declaration, Defendant Chipi contends that "[r]ecords reflect" the Regional URC (as opposed to the institutional URC) decided how Plaintiff's treatment should proceed, that he was seen by a physician's assistant on August 2, 2006, and that Plaintiff complained of a rash, but not of neck or knee pain. (Defs.' Ex. A, ¶¶ 9-10, 12). However, Defendants neglected to submit objective records to support these statements. Additionally, Defendant Chipi states she offered several kinds of medication to Plaintiff on January 31, 2006, such as Tylenol, Motrin, Prozac or Elavil, and Topomax or Keppra (Id., ¶ 6), but the medical record from this date merely states Plaintiff refused medications without listing any specific kinds of medications. (Defs.' Ex. L).

prescribed a six-month supply of Keppra (500 mg) and Motrin (600 mg). (Defs.' Ex. BB).

Plaintiff was then taken to have another MRI on February 8, 2007. (Defs.' Ex. X, p. 3). Dr. Chipi requested that Plaintiff be referred for a transfer to a medical center for surgery and care on February 12, 2007, but the Office of Medical Designations and Transportation ("OMDT") denied the transfer and advised local treatment for Plaintiff's condition on March 13, 2007. (Defs.' Ex. DD). Dr. Chipi prepared another transfer request, dated May 9, 2007, and the OMDT again denied the request and informed staff to pursue local treatment for Plaintiff. (Defs.' Ex. EE).

On June 11, 2007, Dr. Bishop reviewed Plaintiff's most recent cervical MRI and recommended Plaintiff undergo an anterior cervical discectomy and fusion C3-6. (Defs.' Ex. J). Plaintiff had surgery on his neck on July 10, 2007. (Defs.' Ex. B). The next day, July 11, 2007, Plaintiff was seen by prison medical staff, and he reported pain of 4 on a scale of 1 to 10. (Defs.' Ex. D).

Defendants also submitted the Declaration of Dr. Peter Libero, who is currently the Clinical Director at FCI Jesup. In this Declaration, Dr. Libero states he examined Plaintiff on October 15, 2007, and Plaintiff reported his neck was feeling much better; he no longer had pain, weakness, or numbness in his neck, shoulder, or arms; he was not taking any pain medications; and his pain was 0 on a scale of 1 to 10. (Defs.' Ex. K). Dr. Libero states he also examined Plaintiff's left knee. Dr. Libero noted that, although Dr. Hein thought Plaintiff had a torn meniscus in January 2006, Dr. Libero did not find any evidence of that in his examination of Plaintiff. Dr. Libero found Plaintiff to be "quite functional", as he could walk regularly and rapidly, "duck walk", and do squats and other

maneuvers without problems. (Id.) Dr. Libero opined there was no evidence Plaintiff requires knee surgery or any other intervention at the time he signed his Declaration.

Moreover, Defendants submitted a memorandum from Brian Hagan, the recreation specialist, and an e-mail from Brian Ruley, both of which are dated November 13, 2006. These men stated they saw Plaintiff performing several exercises, including yoga stretches, even though members of the medical staff did not know Plaintiff was exercising. (Defs.' Exs. R-S).

Finally, in addition to statements made in her Declaration, Dr. Chipi, in Defendants' Statement of Facts, contends that Dr. Hein recommended Plaintiff have an MRI in November 2005, but Dr. Hein did not indicate the MRI was needed on an urgent or emergency basis and did not recommend Plaintiff needed surgery for his neck. (Doc. No. 19, ¶ 8). Dr. Chipi noted that Plaintiff told a Physician's Assistant he was walking for exercise and sleeping "OK" but complained of neck and knee pain and was given ibuprofen on August 2, 2006; on October 10, 2006, Plaintiff complained of having a rash but not neck or knee pain. (Id. at ¶¶ 14-15). Dr. Chipi states that Dr. Bishop reviewed Plaintiff's most recent MRI on June 11, 2007, and recommended surgery for the first time; however, Defendant Chipi states, Dr. Bishop did not indicate that Plaintiff required surgery on his neck on an urgent or immediate basis. (Id. at ¶¶ 24, 45). Dr. Chipi further states that Plaintiff did not frequently complain about being in pain other than when he had scheduled appointments in the Chronic Care Clinic. Dr. Chipi found that Plaintiff's objective vital signs were inconsistent with those complaints of pain and noted that Plaintiff refused medications offered to him for pain relief and management. (Id. at ¶¶ 27, 46-47). Dr. Chipi alleges Plaintiff claimed in an Administrative Remedy request

dated July 13, 2006, that he had severe pain in his knee and could barely walk. Three weeks later, however, Plaintiff reported to medical staff he was walking for exercise. (Id. at ¶ 48). Finally, Dr. Chipi asserts that, on the one occasion an outside consultant recommended Plaintiff have arthroscopic knee surgery, the institution's URC, not she, determined surgery was not warranted at that time. (Id. at ¶ 49).

In response to Defendant Chipi's evidence, Plaintiff submitted his own evidence. Plaintiff states in his Affidavit that he has never refused any medications which were offered to him. (Pl.'s Aff., ¶ 2). Plaintiff also states he never reported a pain level of 1 to 2 or 3 to 4 on a scale of 1 to 10. (Id. at ¶¶ 3-4). Plaintiff further states the pain medications Dr. Chipi and other members of the medical staff provided were not adequate to provide him with relief from his pain and that he told Dr. Chipi about that. Finally, Plaintiff states he does not deny walking and exercising because, despite experiencing a "high level of pain in [his] knee", he does not want to "suffer the degenerative health effects of being sedentary continually." (Id. at ¶ 6).

Plaintiff also submitted several exhibits[6] in support of his opposition to Defendants' Motion. The results of Plaintiff's February 8, 2007, MRI indicate Plaintiff had spinal canal stenosis at multiple levels with effacement and even slight cord compression. Dr. Michael Smith stated he would be glad to make a comparison between his findings and those of Plaintiff's previous MRI. (Pl.'s Ex. C). Plaintiff also provided the Affidavit of Tyrone Cummings, a fellow inmate at FSL Jesup. In this Affidavit, Mr. Cummings states he dislocated his thumb on July 2, 2007, and was taken to Wayne County Memorial Hospital, where he was examined, had x-rays taken, and

---

[6] Many of Plaintiff's exhibits are documents the undersigned already recounted, as these documents are Plaintiff's medical records which Defendants originally submitted for the Court's review.

was given a wrist brace. Mr. Cummings also states he was taken back to Wayne County Memorial Hospital in early August 2007 for a consultation with a surgeon; however, Mr. Cummings notes institutional staff did not bring his medical records for the surgeon's review, and he had not received any medical attention as of September 15, 2007, the date of his Affidavit. (Pl.'s Ex. G). Finally, Plaintiff submitted two (2) memoranda from the OMDT, dated March 13 and May 15, 2007, which advised staff at the Federal Correctional Institution in Jesup, Georgia, that their requests for Plaintiff's transfer to a Medical Referral Center were denied and that they should pursue local treatment for Plaintiff. (Pl.'s Exs. H-I).

Finally, Plaintiff, in his own Statement of Facts, "accepts as true" many of the statements Defendant Chipi made. (See, e.g., Doc. No. 40, ¶¶ 14-15, 46, 48). Plaintiff contends that, although Dr. Hein did not "specifically state" an MRI was urgent, Defendant Chipi "knew from the nature of the injury that surgical intervention was urgently needed." (Id. at ¶¶ 8, 49). In addition, Plaintiff asserts that, although Dr. Bishop's report "does not indicate the urgent need for surgery, the record in this case demonstrates all the Defendants . . . knew surgery was urgently needed." (Id. at ¶¶ 24, 45). Plaintiff also asserts that he did not frequently complain about pain because, "after being refused adequate pain medication on several occasions, [he] well-knew medical staff would not treat Plaintiff's pain." (Id. at ¶ 27). Plaintiff further asserts Defendant Chipi's statement that his vital signs were inconsistent with his subjective complaints of pain assumes a relationship between vital signs and chronic pain and that he presented medical evidence of a lack of correlation between vital signs and chronic pain. (Id.)

The evidence before the Court indicates that Defendant Chipi was not deliberately indifferent to Plaintiff's serious medical needs, and Plaintiff offers no evidence to refute this conclusion. While the undersigned notes Plaintiff's denials of reporting pain in the low to moderate range, the objective evidence[7] before the Court reveals Plaintiff reported having pain greater than 4 on a scale of 1 to 10 on one occasion. Additionally, the records from the consultative surgeons, Drs. Hein and Bishop, do not indicate Plaintiff was in need of an MRI or surgery on an emergency or urgent basis; in fact, Plaintiff *admits* these doctors' records do not carry this indication or instruction. (Doc. No. 40, ¶¶ 8, 24, 27, 45, and 49). Moreover, Plaintiff's submission of Tyrone Cummings' Affidavit provides no evidentiary support for Plaintiff's assertion that Defendant Chipi was deliberately indifferent to *Plaintiff's* medical needs. Plaintiff's assertions and citations to the objective evidence merely indicate Plaintiff does not agree with the objective evidence that the care he received was medically sufficient to treat his needs. In other words, Plaintiff's opposition to Defendants' Motion in this regard merely boils down to his assertions that he did not receive the medical attention and treatment[8] he deemed appropriate; these assertions are insufficient as a matter of law to sustain a cause of action based on deliberate indifference claims. See Harris, 941 F.2d at 1505. To the extent Plaintiff's deliberate indifference claims hinge on the notion that supposed necessary treatment was delayed, the record is bereft of any evidence that any alleged delay in Plaintiff's treatment caused him to suffer an

---

[7] The objective evidence of record, for purposes of this Report, is that evidence which is verifiable independently of Defendant Chipi's and Plaintiff's self-serving affidavits, such as Plaintiff's medical records.

[8] Nothing in the record supports Plaintiff's bare assertions that the denials of the requests for a transfer to a medical facility were based on non-medical reasons. In any event, these denials were made by the OMDT, not any of the Defendants.

"increased physical injury." <u>Blanchard</u>, 2008 WL 170578 at *4. Plaintiff had surgery on his neck and spine after he had several MRIs and consults with outside physicians and after Defendant Chipi attempted to have Plaintiff transferred to a medical facility. Moreover, Dr. Libero's Declaration indicates Plaintiff is receiving medical attention for his knee on an "as needed" basis. (Defs.' Ex. K). In short, Plaintiff has not met his burden of establishing the existence of a genuine issue of material fact as to whether Defendant Chipi was deliberately indifferent to his serious medical needs. Defendant Chipi is entitled to summary judgment in her favor.

It is unnecessary to address the remaining ground of Defendants' Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this _13th_ day of February, 2008.


JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE